# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| JAMES WILLIAM MORRIS, JR. #64164, | CIVIL ACTION NO. 9:10-2299-JFA-BM |
| Petitioner, | |
| v. | |
| WARDEN ROBERT M. STEVENSON, | **REPORT AND RECOMMENDATION** |
| Respondent. | |

Petitioner, an inmate with the South Carolina Department of Corrections ("SCDC"), seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition was filed on August 27, 2010.[1]

The Respondent filed a return and motion for summary judgment on January 5, 2011. As the Petitioner is proceeding pro se, a Roseboro order was filed on January 7, 2011, advising the Petitioner that he had thirty-four (34) days to file any material in opposition to the motion for summary judgment. Petitioner was specifically advised that if he failed to respond adequately, the motion for summary judgment may be granted, thereby ending his case. After receiving an extension of time, Petitioner filed a memorandum in opposition on February 15, 2011, and a supplemental response on February 22, 2011.[2]

---

[1] Filing date per Houston v. Lack, 487 U.S. 266, 270-276 (1988).

[2] Petitioner's supplemental response appears to be a hand copied duplicate of his earlier
(continued...)



This matter is now before the Court for disposition.[3]

## Procedural History

Petitioner was indicted in July 2005 in Lexington County for murder [Indictment No. 05-GS-32-2813]. (R.pp. 88-89). Petitioner was represented by Lourie A. Salley, III, Esquire, and on October 24, 2005, pled guilty to voluntary manslaughter pursuant to North Carolina v. Alford, 400 U.S. 25 (1970). (R.pp. 1-23). The trial judge sentenced Petitioner to a term of imprisonment of twenty-five (25) years. (R.pp. 23-24). Petitioner did not appeal his conviction or sentence.

On May 23, 2006, Petitioner filed an application for post-conviction relief ("APCR") in state circuit court. Morris v. State of South Carolina, No. 06-CP-32-1783 (R.pp. 26-32). Petitioner raised the following issues in his APCR:

> **Ground One**: Ineffective Assistance of Trial Counsel:
>
> **Supporting Grounds:** Deficient and prejudicial representation of counsel contravening precepts set forth in U.S.C.A. Const. Amends. 6 and 14 in accord with S.C. Const. Art. I §§ 3 and 14.
>
> **Ground Two**: Involuntary, Unknowing and Unintelligent Plea.

(R.p. 28).

Petitioner was represented in his APCR by Rebecca West, Esquire, and an evidentiary hearing was held on Petitioner's application on June 20, 2008. (R.pp. 38-75). On October 1, 2008 (filed October 14, 2008), the PCR judge entered an order denying Petitioner's APCR in its entirety. (R.pp. 77-87).

---

[2](...continued)
response.

[3]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(c) and (e), D.S.C. The Respondent has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.



Petitioner timely filed a notice of appeal. Petitioner was represented on appeal by M. Celia Robinson, Appellate Defender for the South Carolina Commission on Indigent Defense, who raised the following issues:

> **Ground One:** Did the PCR judge err in failing to find that petitioner did not waive his right to a direct appeal but that his appeal was not pursued only as the result of ineffective assistance of counsel in failing to file a notice of appeal so that petitioner is entitled to a belated review?
>
> **Ground Two:** Did the PCR judge err in denying relief despite trial counsel's providing ineffective assistance of counsel which resulted in petitioner's entering an unknowing and involuntary guilty plea?

See Petition, p. 2.

On May 27, 2010, the South Carolina Supreme Court denied the petition. See Morris v. State, letter order filed on May 27, 2010. The Remittitur was issued on June 15, 2010.

In his Petition for writ of habeas corpus filed in United States District Court, Petitioner raises the following grounds:

> **Ground One:** Ineffective assistance of trial counsel.
>
> **Supporting Facts:**
>
> 1) Trial counsel advised mentally ill, over medicated client to enter a guilty plea in order to avoid instant conviction with a prior conviction for which a pardon had been granted.
>
> 2) Trial counsel coerced plaintiff to take an unknowing and involuntary guilty plea.
>
> 3) Trial counsel ineffective for not directly appealing conviction.
>
> **Ground Two:** Involuntary, unknowing and unintelligent plea.
>
> **Supporting Facts:**
>
> Trial counsel coerced Plaintiff to take an unknowing and involuntary guilty plea by saying that prior pardoned charge would be used as an enhancement of sentence. Also because of prior pardoned charge trial counsel told plaintiff that if he proceeded to trial he would be electrocuted or get life in prison.



See Petition, pp. 6-8.

## Discussion

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Rule 56, Fed.R.Civ.P; see Habeas Corpus Rules 5-7, 11. Further, while the federal court is charged with liberally construing pleadings filed by a pro se litigant to allow the development of a potentially meritorious case; See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972); the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

## I.

Petitioner raised the issues of ineffective assistance of counsel and resulting involuntary guilty plea in his APCR, where he had the burden of proving the allegations in his petition. Butler v. State, 334 S.E.2d 813, 814 (S.C. 1985), cert. denied, 474 U.S. 1094 (1986). The PCR court rejected these claims, making relevant findings of fact and conclusions of law in accordance with S.C.Code Ann. § 17-27-80 (1976), as amended. See Morris v. South Carolina, No. 06-CP-32-1783.

Specifically, the PCR judge found that: 1) Petitioner's testimony was not credible, while counsel's testimony was credible; 2) Petitioner provided "absolutely no evidence" that would warrant this court overturning his guilty plea; 3) Petitioner's counsel conducted an investigation in



which he met with his client on numerous occasions, spoke with the solicitor, spoke with the police officers, obtained discovery, spoke with a psychologist, and spoke with an expert; 4) during their meetings, counsel discussed with Petitioner the charges against him, the possible sentences he could receive, the evidence the State had against him, the benefits of a plea and a trial, his constitutional rights, and his rights to appeal; 5) additionally, the plea transcript reflects that the plea judge went over Petitioner's rights with him; 6) both counsel and the plea judge discussed an Alford plea with Petitioner and Petitioner informed the plea court that he fully understood the nature of the plea that he was entering; 7) by Petitioner's own admission, he understood what he was pleading to and the possible sentence he could receive; 8) Petitioner received a definite benefit by entering a plea; 9) several charges were dropped by the solicitor; 10) additionally, Petitioner could have received a harsher sentence than he did had he been convicted at trial; 11) instead, Petitioner was allowed to enter an Alford plea to manslaughter; 12) had Petitioner gone to trial he would have been facing a murder charge and there is a likelihood based on the evidence before this court that he would have been found guilty; 13) there is no issue regarding the plea court's refusal to accept the original plea; 14) the plea court clearly explained itself on the record and ensured that Petitioner's decision was free and voluntary; 15) likewise, counsel testified that he believed that Petitioner understood the plea process, and that after a brief off the record conversation, Petitioner made a free and voluntary decision to tell the court that he felt that there was a significant likelihood he would be found guilty at trial; 16) there was no evidence that counsel misadvised Petitioner regarding the plea deal or the possible sentence he could receive; 17) likewise, counsel did not wrongly advise Petitioner regarding his past record and the fact that the solicitor in certain circumstances would be able to bring his past conviction out at trial; 18) counsel did not force, threaten, or coerce Petitioner into entering a plea; 19) Petitioner was found to be competent; 20) the transcript reflects that Petitioner informed the plea

5



court that he understood the nature of the proceedings, that he understood the questions being asked, and that there was no emotional, mental, or physical illnesses preventing him from understanding the plea he was entering; 21) counsel was not ineffective for not objecting to the facts presented regarding the gun; 22) Petitioner entered a plea and stated that he agreed with the facts; 23) Petitioner affirmatively waived his right to challenge the facts of his case; 24) counsel gave sound advice to Petitioner regarding the problems they would encounter at trial; 25) as counsel stated, Petitioner had given several different versions of what happened; 26) additionally, counsel correctly advised Petitioner of the potential of being found guilty of murder at trial versus pleading to manslaughter; 27) Petitioner was clearly advised of his right to appeal his conviction; 28) counsel testified that Petitioner did not ask him to file an appeal and this Court does not find any evidence that would contradict counsel's testimony; 29) as to any and all allegations that were or could have been raised in the application or at the hearing in this matter, but were not specifically addressed in the PCR court's order, the court found Petitioner failed to present any probative evidence regarding such allegations; 30) Petitioner waived such allegations and failed to meet his burden of proof regarding them; 31) Petitioner did not establish any constitutional violations or deprivations before or during his guilty plea and sentencing proceedings; 32) counsel was not deficient in any manner, nor was Petitioner prejudiced by counsel's representation; and 33) Petitioner failed to establish his plea was involuntary. (R.pp. 84-87).

## II.

Substantial deference is to be given to the state court's findings of fact. Evans v. Smith, 220 F.3d 306, 311-312 (4th Cir. 2000), cert. denied, 532 U.S. 925 (2001) ["We . . . accord state court factual findings a presumption of correctness that can be rebutted only by clear and convincing evidence], cert. denied, 532 U.S. 925 (2001); Bell v. Jarvis, 236 F.3d 149 (4th Cir.



2000)(en banc), cert. denied, 112 S.Ct. 74 (2001).

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). See also Fisher v. Lee, 215 F.3d 438, 446 (4th Cir. 2000), cert. denied, 531 U.S. 1095 (2001); Frye v. Lee, 235 F.3d 897, 900 (4th Cir. 2000), cert. denied, 533 U.S. 960 (2001).

However, although the state court findings as to historical facts are presumed correct under 28 U.S.C. § 2254(e)(1), where the ultimate issue is a mixed question of law and fact, as is the issue of ineffective assistance of counsel, a federal court must reach an independent conclusion. Strickland v. Washington, 466 U.S. 668, 698 (1984); Pruett v. Thompson, 996 F.2d. 1560, 1568 (4th Cir. 1993), cert. denied, 114 S.Ct. 487 (1993) (citing Clozza v. Murray, 913 F.2d. 1092, 1100 (4th Cir. 1990), cert. denied, 499 U.S. 913 (1991)). Nevertheless, since Petitioner's ineffective assistance of counsel claim was adjudicated on the merits by the South Carolina state court, this Court's review is limited by the deferential standard of review set forth in 28 U.S.C. §2254(d), as interpreted by the Supreme Court in Williams v. Taylor, 120 S.Ct. 1495 (2000). Bell v. Jarvis, supra; see also Evans, 220 F.3d at 312 [Under § 2254(d)(1) and (2), federal habeas relief will be granted with respect to a claim adjudicated on the merits in state court proceedings only where such adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States", or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding"]. Therefore, this Court must be mindful of this deferential standard of review in considering Petitioner's ineffective assistance of counsel claims.



## III.

Where allegations of ineffective assistance of counsel are made, the question becomes "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." <u>Strickland</u>, 466 U.S. at 694. In <u>Strickland</u>, the Supreme Court articulated a two prong test to use in determining whether counsel was constitutionally ineffective. First, the Petitioner must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel's performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment. Second, the Petitioner must show that counsel's deficient performance prejudiced the defense such that the Petitioner was deprived of a fair trial. Further, where a guilty plea is involved, in order to show prejudice a Petitioner must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. <u>Hill v. Lockhart</u>, 474 U.S. 52 (1985).

Here, after careful review of the record and the arguments presented, the undersigned finds and concludes that Petitioner has failed to meet his burden of showing that trial counsel was ineffective under this standard, or that his plea was unknowing or involuntary. <u>Smith v. North Carolina</u>, 528 F.2d 807, 809 (4th Cir. 1975) [Petitioner bears the burden of proving his allegations when seeking a writ of habeas corpus]. Petitioner claimed at the PCR hearing that when he told his counsel that he didn't know if he wanted to plead or not, his counsel got "kind of hyper, kind of mad at me, you know, because I wouldn't do it, you know. So I went ahead and signed the paper and I went before a judge." (R.p. 42). Petitioner also testified that although he took an oath to tell the truth at his plea hearing, he did not do so because he felt pressured. (R.p. 59). However, on cross-examination Petitioner conceded that he told the plea judge that no one had forced or threatened him, and that he was not under any influence to get him to waive his rights and enter a plea. (R.p. 58). The



record reflects that Petitioner initially told that plea judge that he didn't think that he would be convicted if he went to trial, at which time the judge told the Petitioner to step down and stopped the plea proceedings. (R.pp. 5-6, 45-47). Petitioner testified that his counsel then told him to tell the judge that he didn't understand the question, and that after he did so his plea proceedings resumed. (R.pp. 48-49). While Petitioner contends that he only answered in this way because his counsel was mad and he didn't want his counsel to be mad at him, on cross-examination Petitioner admitted that he confirmed to the plea judge two times that he believed that there was a substantial likelihood that he would be convicted if he went to trial. (R.pp. 7-8, 48-49, 57). Furthermore, at the PCR hearing Petitioner confirmed twice that he understood what he was pleading to during his voluntary manslaughter plea, and that he knew the potential sentence that he faced on the charges and the potential sentence on the plea that he was being offered by the State at the time of his plea. (R.pp. 43, 52-53).

Petitioner testified that prior to his plea, his counsel discussed with him his prior conviction for manslaughter (which Petitioner was pardoned on) and told Petitioner that the State would bring it up during the trial. (R.pp. 43-44). When asked if there were "any other concerns that you had that maybe [his counsel] didn't understand the circumstances or something else prior to getting it before the judge that day?", Petitioner responded, "[n]o . . . ." (R.p. 45). However, Petitioner testified at the PCR hearing that his counsel should have objected to the Solicitor's recitation of the facts, because his wife's death was an accident, although he subsequently admitted that, after the Solicitor recited these facts at his plea, he told the plea judge that he understood that these were the facts the State intended to prove if he went to trial. (R.pp. 49-50, 58). See (R.p. 18). Petitioner further testified at his PCR hearing that he had suffered from extreme anxiety, panic attacks, and depression while in jail, and that he was taking prozac and trazodone. (R.pp. 52-53). However,



9

Petitioner also admitted that he had met with a psychiatrist and had been found competent to stand trial, and that following an examination the plea judge had found that he was lucid, able to understand what was going on, understood the nature of the plea, and that he was competent at the time of his plea. (R.pp. 60-61).

Finally, Petitioner testified that he never received any written notice from counsel that he could appeal. (R.p. 55). However, Petitioner's counsel testified that the day before the plea, he told Petitioner that even on a guilty plea he had a right to appeal the sentence and that he needed ten (10) days to file the appeal, but that absent an abuse of discretion by the sentencing judge he thought it would be a waste of time (that is, as long as Petitioner got sentenced within whatever the statutory range was), and that the appellate court would not disturb the judge's sentence absent an abuse of discretion. (R.p. 71). Petitioner's counsel also testified at the PCR hearing that he "recall[ed] spending a great deal of time going over, you know, going to trial verses going to a plea. The offer that had been made to us was to plead guilty or plead under <u>Alford versus North Carolina</u> to voluntary manslaughter. Initially they [the State] wanted a guilty plea. That was later revised to an <u>Alford</u> plea." (R.p. 63). Petitioner's counsel testified that he and the Petitioner went through the sentence, the evidence, and weighed going to trial versus doing the plea. (R.pp. 63-64).

Counsel also testified that they went through Petitioner's right to a jury trial, what that entailed, and who they would call as witnesses if Petitioner went to trial. (R.p. 64). Counsel testified that Petitioner initially did not want to plead guilty because he said that he had no malice in his heart, but that he told Petitioner that, in his opinion, the best that they could hope for was a voluntary manslaughter conviction. (R.p. 64). As for Petitioner's explanation that an accident was the reason that his wife was dead, counsel testified that there were several problems with that theory, including the type of gun used, that the gun had been disassembled with part of it by his wife's body and part of



10

it down the road, that Petitioner had changed his story numerous times, and that all of these conflicting statements would be used against the Petitioner at a trial. (R.pp. 64-65). Counsel testified that he went out and viewed the scene, spoke with the police officers, spoke with Petitioner's daughter, and spoke with Petitioner on numerous occasions, and that he was also speaking with an expert and had they gone to trial he would have retained one. (R.p. 67). With regard to Petitioner's mental capacity, counsel testified that he received Petitioner's medical records and also consulted with a friend of his who was "a psychiatrist, a psychologist friend . . . . " (R.p. 66).

Counsel testified that he went over the plea document with the Petitioner, he was there to answer any questions if Petitioner did not understand it, he told him what the document was, he went "over what an Alford plea was, as did the judge", he went over what Petitioner's potential sentence could be and covered every detail, and he was convinced Petitioner's plea was a free and voluntary plea. (R.pp. 70-71). Counsel testified that Petitioner's old conviction for manslaughter would have had no impact unless Petitioner testified and opened the door with specific testimony, and that although Petitioner wanted to take the stand if they went to trial, he had told him that, in his opinion, that would be a mistake. (R.p. 72). Counsel testified that he sat down with the Petitioner and went over "why he believed, why he answered that, and I believe it was an intelligent plea. I think that had he not pled he would have been convicted of murder." (R.pp. 69-70). Counsel testified that he "did not believe [Petitioner] was mentally incompetent. He was competent. And I have no doubt in my mind that he entered into that plea freely and voluntarily and knowingly. He knew the alternative was trial for murder. That was an alternative that neither one of us wanted." (R.p. 74).

The PCR court found trial counsel's testimony more credible than the testimony of the Petitioner, that counsel adequately investigated the case and performed within the required standards for a criminal defense attorney, that Petitioner made the decision to accept the plea offer and received



the benefit of the negotiated plea, and that Petitioner failed to present any evidence to support his claim that he was not competent. Rather, he was examined and found competent, his trial counsel testified as to his abilities and his belief that Petitioner was competent, and both the plea court and PCR court specifically found that he was competent. The PCR court also found that there was no evidence that counsel misadvised Petitioner regarding his past record and the fact that the solicitor in certain circumstances would be able to bring his past convictions out at trial. The PCR court held that it did not find that counsel forced, threatened, or coerced Petitioner into entering a plea and that Petitioner was competent, with the transcript reflecting that Petitioner informed the plea court that he understood the nature of the proceedings, that he understood the questions being asked, and that there was no emotional, mental, or physical illnesses preventing him from understanding the plea he was entering. The PCR court also held that counsel was not ineffective for not objecting to the facts presented by the solicitor. (R.pp. 85-86).

With regard to the issue concerning a direct appeal, Petitioner's right to a direct appeal is only violated if counsel's failure to advise him of appellate procedures was unreasonable. Strickland, 466 U.S. at 687. "[C]ounsel has a constitutionally imposed duty to consult with [the Petitioner] about an appeal when there is reason to think either (1) that a rational defendant would want to appeal [for example, because there are non-frivolous grounds for appeal], or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Roe v. Flores-Ortega, 528 U.S. 470, 480 (2000)["[W]hen the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights."]. Here, the Petitioner received the bargained for results of his plea deal, and in any event the PCR court found that Petitioner was clearly advised of his right to appeal his conviction and that counsel's testimony that Petitioner did not ask



him to file an appeal was credible, and there is no evidence to contradict counsel's testimony.

### IV.

After careful review and consideration, the undersigned finds no basis in this record or the applicable caselaw to overturn the findings of the state court. <u>Evans</u>, 220 F.3d at 312. The United States Supreme Court has ruled that "[r]epresentations of the Defendant, his lawyer and the prosecutor at [arraignment], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings...The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." <u>Blackledge v. Allison</u>, 431 U.S. 63, 73-74 (1977). The record reflects that Petitioner affirmed to the judge at his guilty plea that he understood that he was pleading guilty to voluntary manslaughter, that it was a violent crime, that it carried a sentence of up to thirty (30) years, that he wanted to plead guilty, that it was his decision, that he was pleading of his own free will, and that he understood the plea. (R.pp. 1-20). Petitioner testified that he believed that there was a substantial likelihood that he would be convicted if he went to trial, that no one had made any promises other than reducing the charge from murder to manslaughter and dismissing two related charges in order to get him to plead guilty, that he had had enough time to discuss the matter with his attorney, that he had told his counsel everything that he needed to tell him about the case, that counsel had done everything that he expected of him, that he was satisfied with his counsel, and that he had no complaints about counsel or anyone else who had dealt with his case. In fact, Petitioner was so knowledgeable about the change in charges as a result of his plea that he corrected the Court concerning what was being dropped and what was being pursued (R.pp. 18-19). Petitioner has not provided the Court with any evidence that he did not intend to plead guilty to the charges, under oath to the presiding judge, without objection in open court.



Statements of the accused that facially demonstrate the plea's validity are conclusive absent compelling reasons why they should not be, such as ineffective assistance of counsel. <u>Via v. Superintendent, Powhatan Correctional Center</u>, 643 F.2d 167, 171 (4th Cir. 1981). Petitioner has provided no evidence to show ineffective assistance of counsel in his case. <u>See</u> discussion, <u>supra</u>. Petitioner has therefore failed to present evidence sufficient to show that the state court's rejection of these claims was unreasonable. <u>Evans</u>, 220 F.3d at 312 [Federal habeas relief will not be granted on a claim adjudicated on the merits by the state court unless it resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding]; <u>Bell v. Jarvis</u>, 236 F.3d at 157-158; 28 U.S.C. § 2254(e)(1) [determination of a factual issue by the state court shall be presumed correct unless rebutted by clear and convincing evidence]. Petitioner's claims are without merit and should be dismissed.

### Conclusion

Based on the foregoing, it is recommended that the Respondent's motion for summary judgment be **granted**, and that the Petition be **dismissed**, with prejudice.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

March 16, 2011
Charleston, South Carolina



14

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

